UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Vernon Gray,
      Petitioner

      v.                                     Civil No. 07-cv-77-SM
                                             Opinion No. 2008 DNH 049
Bruce Cattell, Warden,
New Hampshire State Prison,
      Respondent

## O R D E R

In July of 2003, a state grand jury indicted Vernon Gray for
attempted murder, first degree assault, and reckless conduct.
Those charges arose out of an altercation during which Gray was
accused of having shot Matthew Collier - a man with whom Gray
believed his wife was having an affair.  In May of 2005, a jury
acquitted Gray of the more serious charges (i.e., attempted
murder and assault), but convicted him of reckless conduct.
Subsequently, Gray was sentenced to three and one-half to twenty
years in the state prison.

Gray did not file a direct appeal of his conviction.  He
did, however, seek habeas corpus relief from the state trial
court, asserting that: (1) his trial counsel provided
constitutionally deficient representation; and (2) certain
evidentiary rulings issued by the trial court operated to deprive

him of his constitutionally protected right to due process and a fair trial. When that collateral attack upon his conviction proved unsuccessful, Gray filed a petition seeking federal habeas corpus relief in this court. See 28 U.S.C. § 2254.

Pending before the court is the State's motion for summary judgment. For the reasons set forth below, that motion is granted.

## Standard of Review

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited. A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Alternatively, habeas relief may be granted if the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

2

States."  28 U.S.C. § 2254(d)(1).  <u>See also</u> <u>Williams v. Taylor</u>,
529 U.S. 362, 399 (2000).

    With respect to claims, like Gray's, which are brought
pursuant to section 2254(d)(1), the United States Supreme Court
has explained the distinction between decisions that are
"contrary to" clearly established federal law, and those that
involve an "unreasonable application" of that law.

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has
> on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies
> the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies
> that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13.  The Court also noted that an
"incorrect" application of federal law is not necessarily an
"unreasonable" one.

> The most important point is that an <u>unreasonable</u>
> application of federal law is different from an
> <u>incorrect</u> application of federal law . . . . Under §
> 2254(d)(1)'s 'unreasonable application' clause, then, a
> federal habeas court may not issue the writ simply
> because that court concludes in its independent
> judgment that the relevant state-court decision applied
> clearly established federal law erroneously or

incorrectly.  Rather, that application must also be
unreasonable.

Id. at 410-11 (emphasis in original).


Finally, it probably bears noting that a state court need
not rely upon, nor need it even cite, Supreme Court precedent in
order to avoid resolving a petitioner's claims in a way that is
"contrary to" or involves an "unreasonable application of"
clearly established federal law.  See Early v. Packer, 537 U.S.
3, 8 (2002) ("Avoiding these pitfalls does not require citation
of our cases - indeed, it does not even require awareness of our
cases, so long as neither the reasoning nor the result of the
state-court decision contradicts them.") (emphasis in original).


With those principles in mind, the court turns to Gray's
petition and the State's motion for summary judgment.


### Discussion

In support of his petition seeking habeas relief, Gray
asserts that his trial counsel provided him with constitutionally
deficient representation, in violation of his Sixth Amendment
rights.  He also says that the trial court made several erroneous
evidentiary rulings, thereby depriving him of his

constitutionally protected rights to due process and a fair
trial.   The state habeas court addressed those claims on the
merits and resolved them against Gray.   Gray v. Cattell, No. 06-
E-80 (Merrimack Superior Court Nov. 13, 2006) (Exhibit AE-17 to
defendant's answer)(document no. 6-28).   Gray appealed that
decision to the New Hampshire Supreme Court, which declined to
accept the appeal.


I.   Gray Exhausted his Claims in State Court.

     As a preliminary matter, the State asserts that Gray did not
exhaust his claims by properly appealing the habeas court's
decision to the state supreme court.   Accordingly, says the
State, those claims are unexhausted and Gray is procedurally
barred from returning to state court and exhausting them.   The
court disagrees.


     After the superior court denied his habeas corpus petition,
Gray filed an ambiguous pleading with the state supreme court,
which he apparently captioned "Petition for Habeas Corpus."
Subsequently, however, Gray made clear to the court that, rather
than filing a new petition for habeas corpus relief he was,
instead, appealing the adverse decision issued by the state
habeas court in Gray v. Cattell.   He did so by filing a "Rule 7

                              5

Notice of Discretionary Appeal," a form which expressly provides
that it is to be used to "appeal from a final decision on the
merits issued by a superior court . . . [in] a proceeding
involving the collateral challenge to a conviction or sentence."
See Exhibit AE-15 to defendant's answer (document no. 6-26).  The
state supreme court plainly understood Gray's actual intent, and,
after considering the merits of his appeal, declined to accept
it.  See Exhibit AE-18 to defendant's answer (document no. 6-29).


        Importantly, the state supreme court did not reject Gray's
appeal on grounds that he had waived any rights or that he had
failed to properly present any issues on appeal.  See id. ("The
matter was considered by each justice whose name appears below.
If any justice who considered this matter believed the appeal
should have been accepted, this case would have been accepted and
scheduled for briefing.").  Accordingly, this court must presume
that the state supreme court denied Gray's federal constitutional
claims on the same grounds articulated by the state habeas court
in Gray v. Cattell.  See Ylst v. Nunnemaker, 501 U.S. 797, 803
(1991) ("Where there has been one reasoned state judgment
rejecting a federal claim, later unexplained orders upholding
that judgment or rejecting the same claim rest upon the same

ground.  If an earlier opinion fairly appears to rest primarily
upon federal law, we will presume that no procedural default has
been invoked by a subsequent unexplained order that leaves the
judgment or its consequences in place.") (citation and internal
punctuation omitted).

     This record suggests that the state supreme court fully (and
correctly) understood that the issues Gray sought to raise on
appeal were those issues identified in his earlier filing, as
supplemented by the Rule 7 Form.  So, although the state supreme
court declined to accept his appeal, Gray nevertheless fairly
presented his constitutional claims to the State's highest court.
Those claims are, then, fully exhausted.    See, e.g., Clements v.
Maloney, 485 F.3d 158, 162 (1st Cir. 2007) ("In order to exhaust
a claim, the petitioner must present the federal claim fairly and
recognizably to the state courts, meaning that he must show that
he tendered his federal claim in such a way as to make it
probable that a reasonable jurist would have been alerted to the
existence of the federal question.") (citation and internal
punctuation omitted).[1]

----

     [1]     The State also asserts that Gray's claims are
procedurally defaulted.  But, the basis for that argument is
unclear.  Nevertheless, it is sufficient to note that the only
claims that are procedurally defaulted (i.e., those Gray failed
to raise in a timely direct appeal of his conviction) are those

7

II.  Gray's Claims Fail on the Merits.

Having determined that Gray's claims are fully exhausted, the court turns to a consideration of those issues on the merits. Parenthetically, the court notes that even if Gray had not fully exhausted the issues he presses in his federal habeas corpus petition, the court is still authorized to deny them on the merits.  See 28 U.S.C. § 2254(b) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

A.  Ineffective Assistance of Counsel.

In resolving Gray's claim that he was denied effective assistance of counsel, the state habeas court properly observed that Gray bore the burden of establishing that counsel's conduct fell below the standard of reasonably effective assistance and

---

relating to his assertion that the trial court made several erroneous evidentiary rulings.  See Gray v. Cattell, slip op. at 10 ("Rather than appeal his conviction, however, the petitioner determined, after discussion with his counsel, not to seek an appeal.  The Court concludes that the petitioner has thereby waived collateral review of the trial judge's evidentiary rulings.").  But, Gray does not press those arguments in his federal habeas petition, so the issue is of no moment.  Among other issues advanced in this case is Gray's claim that various rulings by the trial court served to deprive him of his constitutionally protected rights - claims that the state habeas court concluded were not procedurally defaulted and, therefore, addressed on the merits.  See id. at 12.

8

that counsel's errors prejudiced his defense.  Gray v. Cattell,
slip op. at 4-5.  See generally Strickland v. Washington, 466
U.S. 668, 687 (1984).  The court then throughly discussed the
basis for its conclusion that Gray's trial counsel did not
provide constitutionally deficient representation.  Id. at 7-9
(noting, among other things, that many of the decisions Gray
challenges were reasonable strategic decisions by trial counsel,
which are entitled to substantial deference).  Next, the court
concluded that, even if Gray had proved that trial counsel's
representation was deficient, Gray failed to demonstrate that he
had been prejudiced by counsel's alleged errors.  Id. at 9.

Nothing in either Gray's habeas petition or his memorandum
plausibly suggests that the state habeas court's resolution of
his ineffective assistance claim was either contrary to, or
involved an unreasonable application of, clearly established
federal law.  See 28 U.S.C. § 2254(d)(1).  In fact, just the
opposite is true.  The record reveals that the state habeas court
properly identified the controlling federal legal principles, as
articulated by the United States Supreme Court, and reasonably
applied those principles in resolving Gray's petition.
Consequently, Gray is not entitled to federal habeas corpus
relief as to his ineffective assistance of counsel claims.

9

B.    Due Process Violations.

As construed by the Magistrate Judge, Gray's federal habeas petition raises two claims relating to the admissibility of evidence at his criminal trial.

> Gray alleges that the trial judge in the case erred in ruling that the key State's witness did not have potential criminal liability that would require his testimony to be excluded under the Fifth Amendment, and that therefore the testimony of the witness was admissible at trial, as it would not cause the witness to incriminate himself.  Further, the trial court abused its discretion in not allowing the defense to introduce certain impeachment evidence that, Gray alleges, was admissible, relevant, and material to the success of his case.  Accordingly, Gray alleges that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to due process and a fair trial.

Magistrate Judge's Preliminary Review of Gray's Petition (document no. 4) at 5-6.


Prior to Gray's criminal trial, the court conducted what is known as a Richards hearing, to determine whether Mr. Collier's right against self-incrimination would be implicated by his proposed trial testimony.  See generally State v. Richards, 129 N.H. 669 (1987) (vacating a defendant's conviction because the trial court failed to properly investigate the validity of the Fifth Amendment privilege asserted by the defendant's sole witness).  See also State v. Caplin, 134 N.H. 302, 308 (1991)

10

(noting that the purpose of a <u>Richards</u> hearing is to allow the trial court to determine "whether to compel a witness to testify, after balancing the witness's right to be free from self-incrimination with the right of the accused to produce exculpatory evidence"). Following that hearing, the court concluded that Mr. Collier's constitutional rights would not be implicated and, therefore, allowed the State to call him as a witness. Mr. Collier then testified at trial and did not seek to invoke his Fifth Amendments rights.

Gray's assertion that the trial court improperly allowed Mr. Collier to testify lacks legal merit. The purpose of a <u>Richards</u> hearing is to determine whether a criminal defendant can compel a witness to testify at trial, notwithstanding the witness's intention to invoke the Fifth Amendment's privilege against self-incrimination. It is not, as Gray seems to believe, a process by which a defendant may <u>preclude</u> a witness from testifying against him. Gray was not entitled to assert the Fifth Amendment privilege of a potential witness as a bar to his testifying. That right is personal to the witness and only the witness can invoke it. <u>See, e.g.</u>, <u>Couch v. United States</u>, 409 U.S. 322, 328 (1973). Plainly, then, the trial court did not err by allowing Mr. Collier to testify against Gray.

11

Moreover, even if he could demonstrate that the trial court
erred by allowing Mr. Collier to testify, Gray has not
demonstrated that he was deprived of any constitutionally
protected rights as a consequence.  It goes without saying that
Gray's Fifth Amendment rights were not violated when Mr. Collier
testified against him.  Nor has Gray shown how the admission of
that testimony violated his constitutionally protected right to
due process and/or a fair trial.  It necessarily follows that
Gray has failed to establish that the state habeas court's
disposition of that claim was contrary to, or involved an
unreasonable application of, clearly established federal law.

Finally, Gray asserts that he was denied due process when
the trial court refused to allow him to introduce evidence he
says would have impeached the credibility of Mr. Collier, the
State's primary witness against him.  The state habeas court
properly noted that because Gray failed to raise that issue on
direct appeal (i.e., it was procedurally barred), Gray was
entitled to habeas relief only if he could demonstrate that: (1)
the (allegedly) improperly excluded evidence was material; and
(2) its exclusion rendered his trial fundamentally unfair.  Gray
v. Cattell, slip op. at 10-11.  See generally Wilkerson v. Cain,
233 F.3d 886, 890 (5th Cir. 2000) ("Habeas relief may be granted

12

based on the state court's erroneous evidentiary ruling only if
that ruling violated [the petitioner's] constitutional rights or
rendered his trial fundamentally unfair."). In other words, Gray
was obligated to make a plausible showing that the excluded
evidence "would have been both material and favorable to his
defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867
(1982).

     After reviewing Gray's claims and the evidence introduced at
his trial (as well as the impeachment evidence Gray says was
improperly excluded), the state habeas court sustainably
concluded that because Gray's trial counsel had so effectively
impeached the credibility of the State's witness, even if such
evidence was improperly excluded from Gray's trial, it was, at
best, cumulative and, therefore, not material. Although Gray
plainly disagrees with that decision, more is necessary to
demonstrate that he is entitled to federal habeas corpus relief.

## Conclusion

     The arguments Gray advances in his petition for federal
habeas corpus relief were not procedurally defaulted in the state
courts. And, Gray properly exhausted those claims by raising
them before the habeas court and then appealing that court's

13

adverse decision to the New Hampshire Supreme Court.  It is,
then, appropriate to address those federal constitutional claims
on the merits.  But, having done so, the court concludes that
Gray has failed to carry his substantial burden of proving that
the state habeas court's resolution of those claims was "contrary
to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States."  28 U.S.C. § 2254(d)(1).  Nor has he shown
that the habeas court's decision was based on "an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  28 U.S.C. § 2254(d)(2).

For the foregoing reasons, as well as those set forth in the
State's memorandum (document no. 15-2) at 17-25, Gray is not
entitled to federal habeas corpus relief.  The State's motion for
summary judgment (document no. 15-1) is, therefore, granted.  The
Clerk of Court shall enter judgment in accordance with this order
and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

March 4, 2008

14

cc:   Vernon Gray, <u>pro</u> <u>se</u>
      Susan P. McGinnis, Esq.
      Stephen Fuller, Office of NHAG
      John Vinson, NHDOC